# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

_____

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                        No. CR 15-1502 WJ

JOSHUA METTS,

      Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

THIS MATTER comes before the Court upon Defendant Joshua Metts' Motion to Suppress Evidence (**Doc. 46**), filed May 6, 2016. Having considered the parties' written and oral arguments, the testimony and evidence presented at the suppression hearing, and the applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is **DENIED**.

### BACKGROUND

On September 12, 2014, at approximately 8:36 p.m., Albuquerque Police Department ("APD") police officers were dispatched to the scene of an alleged armed robbery at the Dollar General store located at 201 San Pedro SE, Albuquerque, New Mexico. The cashier reported to police officers that a female customer, later identified as S.C. and the girlfriend of Defendant Joshua Metts ("Mr. Metts" or "Defendant"), entered the store to refund a phone card, but was denied service due to the store's policy which prohibited the transaction. S.C. left the store and returned with Mr. Metts who demanded a refund from the cashier. Again, the cashier advised

that she could not refund the phone card due to store policy. Mr. Metts bumped the cashier aside with his arm to retrieve several packs of cigarettes, and then left without paying for the cigarettes. The security guard on duty observed the incident, and along with the cashier, followed Mr. Metts outside to the parking lot. Mr. Metts and S.C. entered a 1991 blue Cadillac El Dorado. Mr. Metts produced a handgun and pointed it at the security guard, warning him not to call police. From surveillance video, police officers recognized Mr. Metts and S.C. from prior encounters. Officers made contact with S.C. who agreed to give a statement and corroborated the above facts.

On September 16, 2014, at 2:00 p.m., APD Detective Adam Perea ("Det. Perea") made contact with the Dollar General cashier and showed her a photo lineup with five (5) photos of individuals. The cashier identified Mr. Metts' photo as that of the robber. The following day, a Bernalillo County Metropolitan Court Judge issued an arrest warrant for Mr. Metts based on an affidavit prepared and submitted by Det. Perea.

On October 2, 2014, detectives located a 1991 blue Cadillac El Dorado registered to Mr. Metts. Detectives initiated a felony stop of the vehicle, which came to a stop in an empty parking lot. Detectives identified the driver as Mr. Metts, ordered him out of the vehicle, and placed him under arrest. At this point, the factual recitations of the United States and of Mr. Metts differ significantly.

The United States avers that as detectives arrested Mr. Metts, they saw in plain view a .380 caliber semiautomatic handgun ("firearm") wedged between the driver's side door and the driver's seat. Upon seeing the firearm, detectives immediately backed away from the vehicle. Detectives did not conduct any further search of the defendant's vehicle once they saw the firearm. Det. Perea arrived on scene, visually confirmed the presence of the firearm, and ordered

that the vehicle be sealed and towed to the crime lab for processing in accordance with APD
Procedural Orders governing the impoundment of motor vehicles. Det. Perea prepared a search
warrant for the vehicle, and on October 7, 2014, a Bernalillo County Metropolitan Judge
approved a search warrant for the defendant's vehicle based upon Det. Perea's affidavit. Det.
Perea subsequently executed the search warrant for Mr. Metts' vehicle. Det. Perea's affidavit
states that an inventory search of the vehicle was conducted prior to towing, and located in the
driver's side door a handgun. *See* **Doc. 46-3**.

Defendant states that upon locating Mr. Metts, APD detectives boxed in his vehicle. The
front bumper of one of the officer's vehicles blocked Mr. Metts' driver's side door in such a way
that he had to crawl out of the driver's side window to surrender to police and be placed in
handcuffs. Mr. Metts argues that it is clear that the gun, wedged between the driver's seat and the
driver's door, could not be viewed by officers unless the car door was opened, and thus, it is not
plausible that the gun could have been seen in plain view as officers arrested Mr. Metts.
Defendant notes the discrepancy between the United States' recitation of the facts and Det.
Perea's affidavit: why would Det. Perea state that the gun was found in an inventory search when
it actually was apparently found in plain view? This is especially the case as Defendant argues
that any reasonably well-trained officer would know that the search warrant would be more
highly scrutinized if discovered during an inventory search, but less highly scrutinized if
discovered through the plain view doctrine.

Mr. Metts was indicted on April 23, 2015 for three counts including: (1) interference with
interstate commerce occurring on September 12, 2014; (2) brandishing, using, carrying, and
possessing a firearm during, and in relation to, and in furtherance of, a crime of violence; and (3)
felon in possession of a firearm occurring on October 2, 2014. Subsequently, Count II was

dismissed by way of Superseding Indictment.

Mr. Metts filed this Motion to Suppress Evidence (**Doc. 46**) on May 6, 2016. The United States filed a Response (**Doc. 47**) on May 20, 2016, and Mr. Metts filed a Reply (**Doc. 49**) on June 3, 2016. The Court held a hearing on the matter on June 28, 2016.

## LEGAL STANDARD

The Fourth Amendment protects individuals and their property from unreasonable searches and seizures by the government. *See United States v. Ibarra*, 955 F.2d 1405, 1409 (10th Cir. 1992). A district court cannot suppress evidence unless the movant proves that a search implicates Fourth Amendment interests. *See United States v. Jones*, 44 F.3d 860, 871 (10th Cir. 1995).

The search incident to arrest exception to the Fourth Amendment requirement serves two purposes: to discover hidden weapons and to prevent the suspect from destroying evidence. *See United States v. Edwards*, 632 F.3d 633, 643 (10th Cir. 2001). Consistent with this dual purpose, a search incident to arrest may only include the arrestee's person and the area within his immediate control, meaning the area from within which he might gain possession of a weapon or destructible evidence. *See Arizona v. Gant*, 556 U.S. 332, 339 (2009). The plain view doctrine permits law enforcement to seize evidence of a crime without a warrant if: "(1) the officer was lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately apparent–i.e. the officer had probable cause to believe the object was contraband or evidence of a crime; and (3) the officer had a lawful right of access to the object itself." *United States v. Soussi*, 29 F.3d 565, 570 (10th Cir. 1994) (citations omitted).

The government bears the burden of proving that its impoundment of a vehicle without a

warrant satisfies the Fourth Amendment. *See United States v. Ibarra*, 955 F.2d 1405, 1409 (10th Cir. 1992). However, the policies behind the warrant requirement are not implicated in an inventory search. *See Colorado v. Bertine*, 479 U.S. 367, 371 (1987). A warrantless inventory search is proper when the search is conducted pursuant to standard police procedures for the purpose of protecting the car and its contents. *See United States v. Lugo*, 978 F.2d 631, 636 (10th Cir. 1992). That said, inventory searches must not be a ruse for a general rummaging in order to discover incriminating evidence. *See United States v. Martinez*, 512 F.3d 1268, 1274 (10th Cir. 2008).

**DISCUSSION**

Mr. Metts raises three main arguments as to why the discovery of the firearm should be suppressed. The Court addresses each argument in turn.

**A. Automatic Inventory Searches Improper**

Mr. Metts argues that Tenth Circuit law makes clear that a policy which permits vehicle impoundment in all instances of a driver's arrest is unconstitutional. *See United States v. Pappas*, 735 F.2d 1232, 1234 (10th Cir. 1984). Further, impoundment of a vehicle located on private property that is neither obstructing traffic nor creating an imminent threat to public safety is constitutional only if justified by both a standardized policy and a reasonable, non-pretextual community-caretaking rationale. *See United States v. Sanders*, 796 F.3d 1241, 1248 (10th Cir. 2015). Mr. Metts argues that APD Procedural Orders regarding towing are invalid because they permit impoundment in all cases where the driver is arrested with the only exception being if the vehicle is parked at the driver's residence. Mr. Metts argues that this policy cannot be justified by a reasonable, non-pretextual community-caretaking rationale as required by *Sanders*. In determining whether an impoundment is justified, courts have considered the following non-

exclusive factors: "(1) whether the vehicle is on public or private property; (2) if on private property, whether the property owner has been consulted; (3) whether an alternative to impoundment exists (especially another person capable of driving the vehicle); (4) whether the vehicle is implicated in a crime; and (5) whether the vehicle's owner and/or driver have consented to the impoundment." *Sanders*, 796 F.3d at 1250. Mr. Metts' vehicle was parked on private property, did not interfere with traffic, and posed no threat to safety. Further, the car was not otherwise critical to the crimes for which he was arrested.

Because, according to Mr. Metts, APD's Procedural Orders for towing are improper, and the specific towing of Mr. Metts' vehicle was unreasonable, the discovery of the firearm was done pursuant to an illegal impoundment, tainting the subsequent search warrant. Because Det. Perea submitted a search warrant affidavit only after illegally obtaining incriminating evidence under the auspices of the vehicle impoundment and inventory search, the probable cause for the warrant to search the vehicle was the discovery of the firearm. Thus, evidence of the firearm must be suppressed as fruit of the poisonous tree. Additionally, the inevitable discovery doctrine does not apply because the search warrant affidavit would not have been submitted nor the warrant issued but for the illegal inventory search.

The United States argues that Mr. Metts ignores APD rules in effect regarding towing that specifically apply to armed robberies. APD policies specify for the towing of a vehicle for evidentiary purposes related to armed robberies. The vehicle driven by Mr. Metts on the date of his arrest was the same as the one he was driving on the date of the robbery, and as such, was potential evidence of a crime. Thus, Mr. Metts overstates that applicability of *Sanders*. Where defendant's "vehicle was itself evidence of a crime," the impoundment is "permissible under the Fourth Amendment." *Sanders*, 796 F.3d at 1247. The United States argues that the vehicle itself

6

is evidence as the vehicle allowed Mr. Metts' successful getaway after the robbery. Thus, Mr. Metts' vehicle was towed according to the specific provision requiring towing for evidentiary purposes in armed robberies.

**B. Metropolitan Court Judges Have No Authority to Issue Felony Warrants**

Mr. Metts next argues that the arrest warrant and search warrant leading to the seizure of his vehicle were invalid because they were issued by New Mexico Metropolitan Court[1] judges who lack jurisdiction over felony matters. The criminal jurisdiction of a Metropolitan Court judge is limited by statute to misdemeanors and traffic offenses. NMRA 7-206(A) and NMRA 7-208(A) authorize the Metropolitan Court to issue arrest warrants and search warrants in criminal cases. Because the rules do not expressly state whether warrants may be issued only for misdemeanors, and because the court's authority is limited to such cases by statute, the Rules must also be interpreted in the same way. Just as federal magistrate judges cannot preside over any procedure related to a felony case without a specific grant of authority, New Mexico Metropolitan Court judges are similarly restricted. Therefore, the arrest warrant and search warrant were invalidly issued because they were beyond the scope of the judge's grant of authority.

The United States counters that nothing stops a Metropolitan Court judge from issuing an arrest warrant or a search warrant absent a showing of probable cause. Mr. Metts' argument would effectively invalidate any search warrant that produced evidence of a felony offense even if the search warrant was initially issued for a misdemeanor offense. Such a radical interpretation would lead to absurd results. Regardless, the firearm should not be suppressed because the officers' conduct in searching the vehicle qualifies under the good-faith exception to the

---

[1] The Metropolitan Court is unique to Bernalillo County. *See* N.M. STAT. ANN. §§ 34-8A-1, 34-8A-8. By statute, Metropolitan Court judges must be a member of the bar and have practiced law in New Mexico for at least three years. *See* N.M. STAT. ANN. § 3-8A-4 (2015).

exclusionary rule.

**C. The Court Should Find the Gun was Found in an Inventory Search; Alternatively, the Gun Must be Suppressed under *Arizona v. Gant***

The United States, based on their factual recitation in its Response that the firearm was found pursuant to the plain view doctrine, argues that the firearm was lawfully discovered and should not be suppressed. All elements of the plain view doctrine are satisfied: officers did not violate the Fourth Amendment in arresting Mr. Metts, the firearm was in plain sight and its incriminating character immediately apparent, and the officer had a lawful right of access to the object itself. *See United States v. Soussi*, 29 F.3d 565, 570 (10th Cir. 1994) (citations omitted). Because there was an arrest warrant issued for Mr. Metts, officers had probable cause to arrest him, knew he was a convicted felon, and knew that a firearm was used in the robbery.

The United States also argues that the firearm was properly seized during a search incident to Mr. Metts' lawful arrest. The United States concedes that while Mr. Metts was out of his vehicle and arguably not within reaching distance of the vehicle, officers knew that the vehicle itself was evidence of the crime for which they had probable cause to arrest. Even if the search of Mr. Metts' vehicle cannot be justified as a search incident to a lawful arrest, the good-faith exception to the exclusionary rule should apply, as officers instead relied on *New York v. Belton*, a 1981 Supreme Court decision.

Next, the United States argues that even if the Court finds that there was a violation of the Fourth Amendment by the manner in which Mr. Metts' vehicle was searched, the inevitable discovery doctrine applies to make the evidence admissible. As the vehicle was going to be impounded and an inventory search conducted after the vehicle was towed, the firearm would have inevitably been discovered by lawful means.

8

Alternatively, the United States argues that the firearm was recovered from Mr. Metts' vehicle pursuant to a lawful, standard inventory search. Det. Perea conducted a standard inventory search of the vehicle to protect police from a later claim of missing property.

Mr. Metts hammers at the contradiction between Det. Perea's affidavit in support of the search warrant and the United States' recitation of the facts. Det. Perea's affidavit states that "[d]etectives began an inventory search of the vehicle prior to it being towed and located in the driver's side door is what appears to be a hand gun." (**Doc. 46-3**). Mr. Metts argues that either Det. Perea made at best a serious mistake or at worst committed perjury. Mr. Metts argues that the front bumper of one of the officer's vehicles blocked Mr. Metts' driver side door in such a way that he had to crawl out of the driver's side window to surrender to police and be placed in handcuffs. Thus, it is clear that the gun, wedged between the driver's seat and the driver's door, could not be viewed unless the car door was opened, and thus, it is not plausible that the gun could have been seen in plain view as detectives arrested Mr. Metts.  Therefore, Mr. Metts requests the Court to make a factual finding that the gun was found in an inventory search.

For the same reason the Court should conclude that the gun was not found in plain view, Mr. Metts requests that the Court should also conclude that the alleged "search incident to arrest" was improperly conducted pursuant to *Arizona v. Gant*, 556 U.S. 332 (2009).  *Arizona v. Gant* limits the circumstances of a search incident to arrest to those where the arrestee is unsecured and within reaching distance of the passenger compartments at the time of the search. *See id*. at 343. The United States appears to concede that Mr. Metts was handcuffed at the time and not within reach of the passenger compartments, so Mr. Metts takes issue with the argument that the car may be searched because the car itself was evidence. He argues there is no case law suggesting that every time a vehicle is used by a suspect, the vehicle itself becomes evidence

which permits a search incident to arrest. The fact that Det. Perea sought to secure a warrant underscores the fact that the officers did not consider the car itself evidence.  Mr. Metts further argues that the good-faith exception cannot apply, as *Arizona v. Gant* has been the rule of law for almost five years at the time Mr. Metts' vehicle was searched. Finally, Mr. Metts argues that the inevitable discovery doctrine should not apply because a vehicle cannot be impounded simply because the occupant is arrested. Regardless, the proper procedure is to seal, tow, and then search pursuant to an inventory search.

**D.     The Court's Findings**

At the hearing, Det. Perea testified that he did not arrive on the scene until Mr. Metts was already in custody. Det. Perea testified that from his understanding, Mr. Metts exited through the driver's side window upon commands by police, was handcuffed and placed away from the vehicle, and the vehicle was subsequently checked for persons and threats. A police Sergeant told Det. Perea that a firearm had been found in the car. Det. Perea checked the vehicle and confirmed that the firearm was present in the car, as he would be the individual obtaining the search warrant. Once he saw the firearm, he sealed the car and called for it to be towed, following APD policies to tow a vehicle for evidentiary purposes related to armed robberies and to allow for time to obtain a search warrant to seize the handgun. In his argument at the hearing, counsel for Mr. Metts argued that the discovery of the firearm was improper because the inventory search was a pretextual search for evidence of a crime.

At the outset, the Court finds that the towing and impoundment of Mr. Metts' vehicle was proper. Mr. Metts argues that APD Procedural Orders regarding towing are invalid because they permit impoundment in all cases where the driver is arrested with the only exception being if the vehicle is parked at the driver's residence, in violation of *United States v. Sanders*, 796 F.3d

1241 (10th Cir. 2015). However, the Court finds that if Mr. Metts' vehicle was towed pursuant to the APD Procedural Orders regarding towing, his vehicle was not towed under the general APD towing policy. Rather, Mr. Metts' vehicle was towed based on the specific APD policy for the towing of a vehicle for evidentiary purposes related to armed robberies. As Mr. Metts' 1991 Cadillac El Dorado was the vehicle used in the robbery, it clearly had evidentiary value, and indeed, the firearm allegedly used in the commission of the armed robbery was found in the vehicle. Where defendant's "vehicle was itself evidence of a crime," the impoundment is "permissible under the Fourth Amendment." *Sanders*, 796 F.3d at 1247. The fact that the vehicle was allegedly used to flee the scene, with Mr. Metts carrying the spoils of the robbery in the car, and the fact that Mr. Metts allegedly brandished the firearm from the vehicle itself makes clear that the vehicle was evidence of the crime(s). However, Det. Perea's testimony indicated that while Mr. Metts' vehicle was of evidentiary value, the primary reason for the towing of the vehicle was the discovery of the firearm in the vehicle, whereupon the vehicle was sealed and towed both for evidentiary purposes and community safety.

Det. Perea was not present when the firearm was initially seen and could not testify as to the exact manner in which the firearm was found. Mr. Metts notes that Det. Perea's testimony indicated that the officers who found the firearm in the vehicle did an improper inventory search not pursuant to APD Procedural Orders but pursuant to an unwritten policy of the APD Repeat Offender Project unit. Mr. Metts argues that such a policy permits an inventory search for evidentiary purposes of every felony arrest, in clear violation of Tenth Circuit and Supreme Court case law. Whether or not the discovery of the firearm occurred as a result of the Repeat Offender Project's unwritten policy, the Court finds that under the inevitable discovery doctrine, two separate normal policy procedures would have inevitably led to the discovery of the firearm.

First, upon Mr. Metts' arrest, his vehicle was unlocked with the keys in the ignition and the front window down. Det. Perea testified that it was standard procedure to remove the keys from the ignition of the vehicle. An officer removing the keys from the ignition of Mr. Metts' vehicle would reasonably have seen the firearm in plain view situated between the driver's door and the driver's seat. Indeed, Det. Perea testified that the keys had already been removed from the ignition when he arrived. Even if officers chose not to tow Mr. Metts' vehicle and instead left it in the parking lot, the officer would at least need to roll the window up, remove the keys from the ignition, and lock the vehicle to ensure that the vehicle was not stolen. These actions necessitate the opening of the driver's door which would again reveal the plain view location of the firearm.  Alternatively, as APD Procedural Orders regarding towing call for impoundment for evidentiary purposes related to armed robberies, even if the officers had not found the firearm in plain view, the firearm would inevitably have been discovered during an inventory search at the crime lab. Thus, the Court finds that while it is unclear exactly how the officers discovered the firearm, even if it was done so through an allegedly improper inventory search, the firearm would have inevitably been discovered through either plain view or a full inventory search.

As to Mr. Metts' second argument involving the authority of a Metropolitan Court judge, the Court agrees with the United States and the testimony of Dana Lynn Cox ("Ms. Cox"), Metropolitan Court General Counsel, that there is no statute or rule of procedure that limits the ability of Metropolitan Court judges to issue warrants in felony matters. The Court credits Ms. Cox's testimony that while there are some limits to a Metropolitan Court judge's authority to issue specific warrants, such as those involving wiretaps, there is no rule or procedure stating that a Metropolitan Court judge may only issue misdemeanor warrants. Additionally, the Court agrees with the United States that agreeing with Mr. Metts would effectively invalidate any

search warrant that produced evidence of a felony offense if the search warrant was initially issued for a misdemeanor offense. Thus, the Court finds that the arrest warrant for Mr. Metts and the search warrant for Mr. Metts' vehicle were both properly issued by a Metropolitan Court judge.

Accordingly, for the reasons herein stated, the Court finds that Defendant's Motion to Suppress Evidence is not well-taken and is, therefore, **DENIED**.


**SO ORDERED**

_____
UNITED STATES DISTRICT JUDGE